UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | CASE NO. C16-0689JLR |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| JEFFREY P. POMERANTZ, | |
| Defendant. | |

## I. INTRODUCTION

Before the court is Defendant Jeffrey P. Pomerantz's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Mot. (Dkt. # 9).) In the alternative, Mr. Pomerantz moves to transfer venue to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a). (*Id.*) Plaintiff United States of America ("the Government") opposes Mr. Pomerantz's motion. (Resp. (Dkt. # 11).) Mr. Pomerantz also provides a declaration, which the court considers when addressing the issues relating

to venue. (Pomerantz Decl. (Dkt. # 13-1).) The court has considered the parties' submissions, the relevant portions of the record, and the applicable law. Considering itself fully advised,[1] the court DENIES the motion to transfer and GRANTS the motion to dismiss for failure to state a claim with leave to amend.

## II. BACKGROUND

On May 13, 2016, the Government filed this suit to reduce to judgment civil penalties assessed against Mr. Pomerantz for his alleged failure to disclose foreign bank accounts in his 2007 through 2009 annual taxes. (Compl. (Dkt. # 1) at 2.) When the Government filed its complaint, the alleged civil penalties and interest totaled $860,300.35. (*Id.*) Mr. Pomerantz is a dual citizen of the United States and Canada who resides in Canada (*id.*), and he was allegedly required to file certain tax forms because of his interests in foreign bank accounts (*id.* ¶¶ 22, 36, 44). Mr. Pomerantz, who is proceeding *pro se*, moves to dismiss this case for improper venue under Federal Rule of Civil Procedure 12(b)(3) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[2] (*See* Mot.) Alternatively, Mr. Pomerantz seeks to transfer this action to the District of Columbia. (*Id.*)

//

---

[1] Neither party has requested oral argument, and the court deems it unnecessary to the disposition of this motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] Mr. Pomerantz phrases his argument regarding venue in a way that suggests he may attempt to challenge the court's personal jurisdiction over him. (*See* Mot. at 5.) However, he has waived that defense by failing to affirmatively raise it. *See* Fed. R. Civ. P. 12(h)(1)(A); *see also Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1007 (9th Cir. 2000) (holding that a *pro se* defendant waived the defense of lack of personal jurisdiction by omitting it from a Rule 12 motion to dismiss for insufficient process).

## III. ANALYSIS

**A. Venue**

Mr. Pomerantz moves to dismiss this case for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). (*Id.* at 1.) Dismissal for improper venue is only proper when venue is "wrong" or "improper." Fed. R. Civ. P. 12(b)(3); *Atl. Marine Constr. Co. v. U.S. Dist. Court*, -- U.S. --, 134 S. Ct. 568, 577 (2013). The federal venue statute provides that "[a] defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3); *see also Brunette Mach. Works, Ltd v. Kockum Indus., Inc.*, 406 U.S. 706, 714 (1972) (affirming that the provision in Section 1391 governing venue over a foreign defendant "is properly regarded not as a venue restriction at all, but rather as a declaration of the long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special"). Mr. Pomerantz concedes that he is not a resident of the United States. (Pomerantz Decl. ¶ 1.) Therefore, venue is proper in any judicial district, including the Western District of Washington, and the court denies the motion to dismiss for improper venue.

In the alternative, Mr. Pomerantz moves to transfer venue to the United States District Court for the District of Columbia under 28 U.S.C. § 1404(a), chiefly because his counsel of choice is admitted to practice before that court. (*See* Mot. at 8.) Section 1404 grants judges discretion to transfer a case to another district, even though venue is proper in the current forum. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). The purposes of Section 1404(a) are to prevent wasted "time, energy, and money

//

and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

1. Legal Standard

The court must "adjudicate motions for transfer [of venue] according to an individualized, case-by-case consideration of convenience and fairness." *Jones*, 211 F.3d at 498. As the movant, Mr. Pomerantz bears the burden of showing transfer is appropriate. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). In determining whether to transfer venue pursuant to Section 1404(a), the Ninth Circuit articulated several factors that the court should consider: "(1) the location where the relevant agreements were negotiated and executed, (2) the district that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones*, 211 F.3d at 498-99.

2. Factors Related to Location

The first factor—the location where the underlying agreement was negotiated or concluded—is neutral because there are no agreements between the parties. (*See generally* Compl.) The second factor—the district most familiar with the governing law—is also neutral. Neither party argues that federal courts in Washington or the District of Columbia have superior familiarity with the federal law, and federal district

//

courts are presumed to be equally capable of applying federal law. *See Cargill Inc. v. Prudential Ins. Co. of Am.*, 920 F. Supp. 144, 148 (D. Colo. 1996).

The fifth factor—the contacts between the Government's claims and the chosen forum—is also neutral. *See Jones*, 211 F.3d at 498. The acts or omissions that allegedly give rise to the claim took place when Mr. Pomerantz failed to file the contested tax forms from his residence in Canada. (Resp. at 7.) Neither party asserts any relationship between the cause of action and the Western District of Washington or the District of Columbia. (*See generally* Mot.; Resp.)

3. Factors Related to the Parties

The third factor—the plaintiff's choice of forum—favors denying the motion to transfer. As the plaintiff in this action, the Government's choice of forum generally receives deference under Section 1404(a). *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The court balances this deference against the extent of the plaintiff's and defendant's contacts with the forum, "including those relating to his cause of action." *See Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968.) "If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is only entitled to minimal consideration." *Id.* None of the operative facts occurred in the Western District of Washington, and this forum does not have any particular interest in the parties or the subject matter. (*See generally* Compl.) Neither the assessment of the FBAR penalties nor the hearings related to it occurred in Washington. (*See id.*; Resp. at 7.) Thus, this factor weighs only slightly against transfer of venue.

Likewise, the fourth factor—the parties' contacts with the forum—supports denying the motion to transfer. The Government asserts that Mr. Pomerantz has had frequent contact with the Western District of Washington (*see* Resp. at 7), whereas Mr. Pomerantz contends that he does not "regularly or frequently cross into th[at] district," only for short visits "every 2-3 months" (Pomerantz Decl. ¶ 9). Mr. Pomerantz does not identify any personal contacts with the District of Columbia, but he notes that his counsel of choice is a member of the District of Columbia bar. (Mot. at 4; *see also* Pomerantz Decl. ¶ 10 (stating that Mr. Pomerantz "cannot afford counsel and ha[s] no access to counsel licensed to practice before this court").) On balance, the court concludes that this factor weighs against transfer because the relevant contacts under *Jones* are the contacts between the parties, the witnesses, and the potential fora, not the parties' representatives. *See* 28 U.S.C. § 1404 (listing interests to be considered as those of "parties and witnesses").

    4. <u>Factors Related to Litigation</u>

The sixth factor—differences in litigation costs—is also neutral. Mr. Pomerantz declares that he "cannot afford counsel" and has "no access to counsel licensed to practice in the Western District of Washington. (Pomerantz Decl. ¶ 10.) Mr. Pomerantz further asserts that he "has no connection with anyone in Washington [S]tate to act as his counsel and doesn't feel that anyone there would be more qualified than his choice of representative." (Mot. at 4.)

The conveniences to be considered when determining whether transfer is warranted are those of the "parties and witnesses." 28 U.S.C. § 1404. Generally,

convenience of counsel may not be considered as part of the Section 1404(a) analysis. *See, e.g.*, *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) (holding that the district court's "consideration of location of counsel as a factor to be considered in determining the propriety of a motion to transfer venue was an abuse of discretion").

A minority of courts have considered convenience of counsel a proper consideration when deciding whether to transfer a case, as a derivative of the parties' interests in litigation costs. *See Mobil Oil Corp. v. W. R. Grace & Co.*, 334 F. Supp. 117, 124 n.5 (S.D. Tex. 1971) ("The cost of counsel's transportation and time in route must be borne by the parties. Therefore this factor directly bears upon the convenience of the parties and costs of litigation"). However, Mr. Pomerantz does not assert that his chosen counsel will incur additional costs if this case remains in the Western District of Washington. (*See generally* Mot.) Mr. Pomerantz instead argues that his chosen counsel cannot practice in this court at all because his preferred counsel is not admitted to practice in this court and cannot be admitted *pro hac vice* because "he has no connection with anyone who may be willing to act as local counsel." (*See id.* at 4.) The court finds this argument unpersuasive.

Before the District Court for the District of Hawaii, a plaintiff asserted that his counsel of choice resided in Hawaii, and if the court granted the defendant's motion to transfer, the plaintiff would likely be unable "to find another attorney to represent [him] in New York." *Berry v. Deutsche Bank Tr. Co. Americas*, No. 07-00172 SOM/LEK, 2007 WL 2363366, at *8 (D. Haw. Aug. 13, 2007). The court gave this argument no weight, reaffirming that "courts have not considered the location of the parties' counsel

as a factor for transfer." *Id.* (citing *Kawamoto v. CB Richard Ellis, Inc.*, 225 F. Supp. 2d 1209, 1215-16 (D. Haw. 2002)); *see also* 15 Wright & Miller, Federal Practice & Procedure § 3850 (4th ed. 2017) (stating the general rule that the location of counsel is not a factor to considered on a motion to transfer venue). Thus, this court does not consider the location of Mr. Pomerantz's counsel as a factor for transfer. As neither party has alleged any other basis for increased litigation costs in either forum, the sixth factor is neutral.

The seventh and eighth factors—the ease of access to sources of proof and witnesses—are also neutral. Mr. Pomerantz identifies no witnesses or evidence that are more easily accessed from the District of Columbia than from the Western District of Washington. (*See generally* Mot.)

    5. Weighing the Factors

The only non-neutral factors are the plaintiff's choice of forum and the parties' contact with the forum, and each weighs against transferring venue. *See supra* §§ III.A.2-4. Accordingly, the court denies Mr. Pomerantz's motion to transfer.

**B.**     **Failure to State a Claim**

In his motion to dismiss, Mr. Pomerantz asserts that the Government fails to plead sufficient facts to support the reasonable inference that he "willfully" failed to file a required report regarding foreign bank accounts in 2007, 2008, and 2009.[3] (Mot. at 8.) The Government responds by identifying allegations that it contends suggest Mr.

---

[3] Mr. Pomerantz provides a declaration supporting his motion to dismiss. (*See generally* Pomerantz Decl.) If, in a motion to dismiss for failure to state a claim, a court is presented with

Pomerantz was either willfully ignorant of the reporting requirement or had actual knowledge of the reporting requirement and his duty to comply with it. (Resp. at 4.)

1. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court may dismiss a complaint as a matter of law if it lacks a cognizable legal theory or states insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

The court need not accept as true a legal conclusion presented as a factual allegation. *Iqbal*, 556 U.S. at 678. Although Rule 8 does not require "detailed factual allegations," it demands more than "an unadorned, the-defendant-unlawfully-harmed-me

---

matters outside the pleadings and does not exclude them, the court must treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d). The court therefore excludes Mr. Pomerantz's declaration from its consideration of the motion to dismiss for failure to state a claim and does not convert the motion to one for summary judgment.

accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). A pleading that offers only "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.*

  2. <u>The Government's Claim</u>

  The Government seeks to reduce to an enforceable judgment a civil penalty assessed against Mr. Pomerantz by a delegate of the Secretary of the Treasury. (Compl. at 1); 31 U.S.C. § 5321(a)(5). Section 5321(a)(5) permits the Secretary of Treasury to "commence a civil action to recover a civil penalty," but it does not indicate the elements of such an action. *See United States v. McBride*, 908 F. Supp. 2d 1186, 1201 (D. Utah 2012). Courts have concluded the validity of the underlying civil penalty is one element of an action to reduce a penalty to judgment. *See United States v. Williams*, No. 1:09-CV-437, 2010 WL 3473311, at *1 (E.D. Va. Sept. 1, 2010), *rev'd on other grounds*, 489 F. App'x 655 (4th Cir. 2012). In *United States v. Williams*, the District Court for the Eastern District of Virginia concluded that a court should review the assessment of the underlying penalty *de novo*, and the amount of the penalty under an arbitrary and capricious standard. *Id.*; *accord McBride*, 908 F. Supp. 2d at 1201 (applying a *de novo* standard to whether the underlying penalty was a valid debt); *Moore v. United States*, No. C13-2063RAJ, 2015 WL 1510007, at *7 (W.D. Wash. Apr. 1, 2015) (same). Thus, in order to state a claim to reduce a civil penalty to a judgment, the Government must allege sufficient facts to support a reasonable inference that (1) the government assessed a civil penalty, and (2) the penalty was valid. To adequately allege that the penalty was valid, the Government must allege facts supporting each element of the underlying penalty. *See*

*United States v. Toth*, No. 15-CV-13367-ADB, 2017 WL 1703936, at *4 (D. Mass. May 2, 2017) (using the elements of C.F.R. § 1010.350 as elements of an action to reduce to judgment a civil FBAR penalty in ruling on a motion to dismiss).

The civil penalties that the Government seeks to reduce to a judgment result from Mr. Pomerantz's alleged failure to file Treasury Form TD F 90-22.1 (an "FBAR Form"), which reports foreign bank and financial accounts. (Compl. at 1.) A duty to file an FBAR form arises if: (1) a "U.S. Person";[4] (2) has a direct financial interest in, an indirect financial interest in, signatory authority over, or some other type of authority over one or more financial accounts located in a foreign country; and (3) the aggregate value of such account or accounts was greater than $10,000.00 at any time during the calendar year at issue. 31 U.S.C. § 5314; *see also* 31 C.F.R. § 1010.350. Additionally, because the Government assessed a penalty greater than $10,000.00 for each alleged failure to file (Compl. ¶¶ 24, 46, 48), Mr. Pomerantz's failure to file must have been willful, 31 U.S.C. § 5321. Thus, in order to state a claim the Government must plead facts supporting the reasonable inferences that (1) Mr. Pomerantz was a "U.S. Person," who (2) had an interest in or authority over the subject foreign accounts, which (3) had an aggregate value of $10,000.00 or more, and (4) that he willfully failed to file an FBAR

//

//

---

[4] "U.S. Person" is a term of art that includes U.S. citizens. *See* 31 C.F.R. § 1010.350. Mr. Pomerantz does not contest that he was a "U.S. Person" during the relevant time and declares that he is a U.S. citizen. (*See* Mot.; Pomerantz Decl. ¶ 1.)

Form for the accounts. Mr. Pomerantz contends that the Government fails to adequately allege his "interest in or authority" over foreign accounts and willful failure to file.[5]

   *a. Interest or Authority over Foreign Financial Accounts*

The "interest or authority" element may be met by showing that the taxpayer: (1) had a direct financial interest in a foreign account, (2) had an indirect financial interest in a foreign account, or (3) served as a signatory or had other authority over a foreign account. 31 C.F.R. § 1010.350(b). The Government alleges two sets of foreign accounts provide the basis for the penalties assessed: (1) Mr. Pomerantz's personal accounts located in Canada (the "CIBC Accounts"), and (2) Mr. Pomerantz's accounts in Switzerland (the "Grand Turk Oppenheim Accounts," the "2003 Oppenheim Portfolio Accounts," and the "2007 Oppenheim Portfolio Accounts" (collectively, the "Chafford Limited Accounts")).[6] (Compl. ¶¶ 5-13.)

The Government alleges that the CIBC Accounts are located in Canada and that Mr. Pomerantz had a direct financial interest in them. (*Id.* ¶ 5.) The Government further alleges that Mr. Pomerantz formed a corporation named Chafford Limited, in whose name the Chafford Limited Accounts were opened, and that Mr. Pomerantz "retained full powers to exercise any and all rights to act on behalf of" Chafford Limited.

---

[5] Mr. Pomerantz does not contest the Government's allegation that the aggregate amount was greater than $10,000.00. (*See generally* Mot.)

[6] The Government also alleges facts regarding "Tofino Accounts." (*See* Compl. ¶¶ 24, 46, 48.) However, because the Government does not allege that any of the 2007, 2008, and 2009 penalties were based on the Tofino Accounts, the court does not address the Tofino Accounts herein. (*See generally id.*)

(*Id.* ¶ 6.) These allegations plausibly support the inferences that Mr. Pomerantz had a "financial interest" in the CIBC Accounts and an "other financial interest" in the Chafford Limited Accounts, and that both sets of accounts were foreign. *See* 31 C.F.R. § 1010.31(e)(ii)(2).

### b. *Willful Failure to File*

Because the civil penalties exceed the statutory limit for a non-willful failure to file an FBAR Form, the Government must allege facts supporting the inference that Mr. Pomerantz acted "willfully" in his failure to file. *See* 31 U.S.C. § 5321(a)(5)(c). Generally, a "willful" failure for purposes of the Bank Secrecy Act is "an intentional violation of a known legal duty to report." *Ratzlaf v. United States*, 510 U.S. 135, 154 n.5 (1994); *see also United States v. Zwerner,* No. 13-22082-CIV, 2014 WL 11878430, at *3, n.3 (S.D. Fla. Apr. 29, 2014) (adopting the *Ratzlaf* definition for civil FBAR penalties); *accord* IRS CCA 200603026, 2006 WL 148700 at *1-2 (Jan. 20, 2006) (An IRS chief counsel advisory opinion addressing in part the definition of "willful" FBAR reporting violations.).

The Government alleges that Mr. Pomerantz's failure to timely file FBAR Forms "was willful within the meaning of 31 U.S.C. § 5321(a)(5)," implying that Mr. Pomerantz had either constructive or actual knowledge of the reporting duty. (*Id.* ¶¶ 23, 37, 45.) However, these allegations are precisely the "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that are insufficient to state a claim. *Iqbal*, 556 U.S. 662, 678, (2009) (citing *Twombly*, 550 U.S. at 555). They do not plausibly support the inference that Mr. Pomerantz knew of the reporting duty. Instead,

the Government must allege sufficient facts to plausibly support the inference that Mr. Pomerantz knew—actually or constructively—of the reporting requirement. *United States v. Williams*, 489 F. App'x 655, 659 (4th Cir. 2012).

      i. Actual Knowledge

Actual knowledge of the duty to report may be inferred from a course of conduct that demonstrates a conscious attempt to conceal the failure to report. *See United States v. Sturman*, 951 F.2d 1466, 1476 (6th Cir. 1991) (citing *Spies v. United States*, 317 U.S. 492, 499 (1943)). The Government alleges that the company Mr. Pomerantz used to open the Swiss accounts—Chafford Limited—"conducted no active business, but was a shell entity used to hold and manage [Mr.] Pomerantz' personal investments." (Compl. ¶¶ 6-7.)

Similar allegations, combined with the taxpayer's failure to pursue knowledge of further reporting requirements, sufficiently supported a finding of "willfulness" in *Sturman*. *See* 951 F.2d at 1476-77. The court can plausibly infer an intent to evade the foreign bank account reporting requirement based on the creation of foreign bank accounts in the name of a shell company. *See id.* Thus, with regard to the Chafford Limited Accounts, the Government has adequately pleaded facts supporting the inference that Mr. Pomerantz knew of his duty to report.

However, Mr. Pomerantz opened the CIBC Accounts in his own name. (Compl. ¶ 5.) The accounts were opened prior to January 1, 2001, well before the allegedly "duplicitous" actions occurred. (*Id.*) The Government makes no allegations that Mr. Pomerantz took steps to conceal or mislead sources of income by opening the CIBC

Accounts, and since the accounts were created well before the allegedly "duplicitous" actions occurred, the court cannot infer a confiscatory intent with regard to the CIBC Accounts. (*See id.*) The court declines to infer from Mr. Pomerantz's creation of the Chafford Limited Accounts knowledge of the duty to file FBAR Forms for the CIBC Accounts. The Government has not provided the court with any authority in which a court inferred from obfuscating conduct with no connection to a particular account an intent to evade a reporting obligation for that account, and the court finds such an inference implausible. (*See generally* Resp.) Thus, with regard to the CIBC Accounts, the Government makes only speculative and conclusory allegations regarding Mr. Pomerantz's actual knowledge.

        ii. Constructive Knowledge

Knowledge of the duty to report may be actual or constructive. *Williams*, 489 F. App'x at 659. Taxpayers who are willfully ignorant of the reporting requirement are treated as if they knew of the requirement, under the theory of constructive knowledge. *Id.* The Government alleges that Mr. Pomerantz "failed to report income deposited into, and/or received from, the foreign accounts." (Compl. ¶¶ 22, 36, 44.) The Government argues that the court can reasonably infer from this allegation that Mr. Pomerantz was willfully ignorant of the FBAR reporting obligation. (Resp. at 4.)

However, the cases the Government cites in support of this argument have found "willful ignorance" of the FBAR reporting duty because the government showed that the taxpayer was on inquiry notice of the duty due to specific language on a Schedule B tax form, which directs filers to the FBAR filing instructions and requirements. *See*

*Williams*, 2010 WL 3473311, at *4 (imputing knowledge of the FBAR reporting requirement to a taxpayer who completed a Schedule B form); *McBride*, 908 F. Supp. 2d at 1197-98 (same); *Sturman*, 951 F.2d at 1476 (imputing knowledge of the FBAR reporting requirement to a taxpayer who was "aware of" the Schedule B form's contents).

Here, in contrast, the Government does not allege that Mr. Pomerantz filled out a Schedule B Form or was otherwise aware of its contents and instructions regarding the FBAR reporting requirement. (*See generally* Compl.) Nor has the Government alleged any other basis to infer willful ignorance. (*Id.*) Accordingly, the court cannot reasonably infer that Mr. Pomerantz was willfully ignorant of the FBAR duty to report.

Based on the foregoing analysis, the court concludes that the Government fails to sufficiently plead that any failure of the duty to report with regard to the CIBC Accounts was willful. The court cannot disaggregate the amount of the penalty that resulted from the failure to report the CIBC accounts from the failure to report the Chafford Limited Accounts. Because the CIBC Accounts were part of the basis for levying each of the penalties that the Government seeks to reduce to judgment, the court accordingly dismisses the entire complaint as to all three penalties. (Compl. ¶¶ 24, 46, 48.)

**C.     Leave to Amend**

As a general rule, when a court grants a motion to dismiss, the court should dismiss the complaint with leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)). The policy favoring amendment is to be applied with "extreme liberality." *Id.* at 1051. In determining whether dismissal with leave to amend is appropriate, courts consider such

factors as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Mr. Pomerantz does not argue that any prejudice, undue delay, bad faith, or dilatory motive should preclude leave to amend, and the court discerns no such circumstances. (*See generally* Mot; Reply (Dkt. # 13).) The court also concludes that amendment would not be futile at this stage of the proceedings. The court therefore grants the Government leave to amend its complaint within 21 days of the entry of this order. If the Government fails to file an amended complaint by that deadline, the court will dismiss the complaint with prejudice.

## IV. CONCLUSION

The court DENIES Mr. Pomerantz's motion to transfer but GRANTS his motion to dismiss for failure to state a claim (Dkt. # 9) and GRANTS the Government leave to amend its complaint. The Government's amended complaint, if any, must be filed and served no later than twenty-one (21) days from the entry of this order.

Dated this 8th day of June, 2017.

JAMES L. ROBART
United States District Judge